IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAACO FRANCHISING, INC. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| WALID HASSOUN NAAMAN, ROGER D. | : | NO. 10-7410 |
| NAAMAN, AND EDGAR THOMAS SMITH | : | |

**MEMORANDUM**

**Padova, J.**                                              **November 29, 2011**

This action arises from Defendants' alleged breach of their Franchise Agreement with Plaintiff. Plaintiff claims that Defendants failed to pay it various fees they owed under the Franchise Agreement. Plaintiff has moved for summary judgment. For the following reasons, the Motion is granted.

## I.      BACKGROUND

Plaintiff Maaco Franchising, Inc. ("Maaco") is the franchisor of Maaco Collision Repair and Auto Painting Centers throughout the United States. (Reynolds Cert. ¶ 8.) "Maaco Centers specialize in automobile painting and body repair and other automotive products and services." (Id. ¶ 9.) "Maaco franchisees are licensed to use Maaco's trade names, service marks and trademarks and to operate under the Maaco System, which involves using specially designed spaces with special equipment layouts, software, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information." (Id.) "Maaco provides its franchisees with extensive training and assistance in all facets of operating and promoting a Maaco Collision Repair and Auto Painting Center." (Id. ¶ 13.) Maaco franchisees are trained in the areas of "operations, advertising, accounting, and specifications for inventory, supplies,

1

equipment, and signage." (Id.)  "Maaco also provides its franchisees with its Confidential Operating Manual." (Id.)

On November 15, 2002, Maaco entered into an agreement with Defendants Roger Naaman and Walid Naaman (collectively, "the Naamans"), in which the Naamans agreed to operate a Maaco franchise in Dallas, Texas.  (Franchise Agreement ¶ 1.A.)  Defendant Edgar Smith was added as a franchisee pursuant to the parties' Addendum to Franchise Agreement and Polaris Agreement dated July 16, 2007 (the "Addendum").  (Reynolds Cert. ¶ 7; Addendum ¶ C.)

Under the terms of the Franchise Agreement, the Defendants agreed, in return for their right to display Maaco's proprietary marks and participate in Maaco's franchise system, to:  a) pay Maaco a weekly royalty fee of nine percent of the gross receipts generated by the center; b) pay Maaco a weekly advertising fee of $850; c) report accurately to Maaco each week the gross receipts for the preceding calender week, at which time all required fees would be paid; and d) pay Maaco a weekly fee for Yellow Pages advertising.  (Franchise Agreement ¶¶ 4.A.2, 5.B, 4.D, 5.C.)  The Franchise Agreement further provides that, in the event that Defendants failed to pay Maaco any money due, they were entitled to a written notice and fifteen days to cure their financial default.  (Id. ¶ 14.B.)  If Defendants failed to cure their financial default within the time provided, Maaco had the right to immediately terminate the Franchise Agreement and Defendants' franchise.  (Id.) The Franchise Agreement also states that, if the franchise were terminated by Maaco, Defendants would promptly pay all sums owed to Maaco.  (Id. ¶ 15.F.)  The Franchise Agreement further requires Defendants to pay Maaco's reasonable attorneys' fees, court costs, and litigation expenses incurred should Maaco have to bring suit to protect its rights or enforce the terms of the Franchise Agreement.  (Id. ¶ 24.E.)  The Franchise Agreement also includes an integration clause that provides that any

2

modification to the Franchise Agreement must be in writing.  (Id. ¶ 22.)

Defendants failed to pay royalty, advertising, and other fees to Maaco as required under the Franchise Agreement.  (Baratta Cert. ¶¶ 4, 6.) Maaco sent a Notice of Default to Defendants on June 15, 2010, informing Defendants that they were in default of the Franchise Agreement for failing to submit their weekly business reports and for failing to pay weekly royalty fees, advertising fees, and paint and supply expenses in the amount of $83,050.74.  (Reynolds Cert. ¶ 14; Notice of Default.)  The Notice of Default also informed Defendants that if they did not cure their defaults within 30 days of receipt of the Notice, Maaco could elect to terminate the Franchise Agreement.  (Notice of Default at 1.)  Defendants failed to cure their default and as of September 29, 2010, owed Maaco $38,187.35 in unpaid royalty fees, $42,589.10 in unpaid paint and supply fees, and $49,343.67 in unpaid advertising fees.  (Baratta Cert. ¶ 6 and Ex. A.) Maaco sent Defendants a Notice of Termination of Franchise Agreement on September 30, 2010.  (Reynolds Cert. ¶ 15; Notice of Termination.)  The Notice of Termination states that Maaco has elected to terminate the Franchise Agreement and demands that Defendants promptly pay Maaco the money they owe.  (Notice of Termination at 1, 2.) Defendants have not made any payments to Maaco since the Franchise Agreement was terminated. (Baratta Cert. ¶ 7.)

Plaintiff's Amended Complaint asserts one claim for breach of contract based on Defendants' failure to pay fees owed to Maaco pursuant to the Franchise Agreement and Addendum.[1]  Plaintiff seeks the entry of summary judgment in its favor on its breach of contract claim and damages

---

[1] The Amended Complaint also asserts a claim for breach of contract based on Defendants' breach of a covenant not to compete contained in the Franchise Agreement.  (Am. Compl. ¶¶ 39-45.) That claim was resolved by the parties pursuant to the Consent Decree and Order dated April 13, 2011.

comprising royalty, advertising, and paint and supply fees Defendants owe to Plaintiff, plus attorneys' fees and costs of litigation.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party also bears the burden of proof at trial, that party must support its motion with sufficient evidence that would entitle it to a directed verdict. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (citations omitted). Once the moving party has made such a showing, the non-moving party can defeat the motion "with probative evidence that would demonstrate the existence of a triable issue of fact." Id. at 238 (citations omitted).

## III.   DISCUSSION

Plaintiff seeks the entry of judgment in its favor on its claim for breach of contract for nonpayment of fees. Plaintiff asserts that Defendants owe a total of $130,120.12 in unpaid fees comprising of $38,187.35 in unpaid royalty fees, $42,589.10 in unpaid paint and supply expenses, and $49,343.67 in unpaid advertising fees. "In order to establish a breach of contract under Pennsylvania law, a plaintiff must show that (1) a contract existed between it and defendant, (2) the

4

defendant breached a duty imposed by the contract, and (3) the plaintiff suffered damages as a result." Harleysville Nat'l Bank and Trust Co. v. Haisfield, Civ. A. No. 09-5358, 2010 WL 2079755, at *2 (E.D. Pa. May 24, 2010) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

It is undisputed that Plaintiff and Defendants entered into a contract, the Franchise Agreement. (Franchise Agreement; Addendum; Naaman Defs.' Resp. Br.) The Naaman Defendants, however, assert that there is a genuine issue of material fact regarding whether they owe the whole $130,120.12 Plaintiff claims. The Naamans further argue that the existence of this dispute should preclude the entry of summary judgment. Plaintiff has supplied the following evidence, which is summarized above, to support its claim: the Franchise Agreement, the Addendum, the Notice of Default and the attachment thereto, the Notice of Termination, the certification of Paul Baratta, and the consolidated statement of account dated October 29, 2010. The Naamans rely solely on the Affidavit of Roger Naaman, which states in relevant part:

> Not each and every item claimed by plaintiff Maaco for franchise fees, advertising fees, and fees for paint and supplies is correct. With respect to the paint and supplies, I do not believe that the paint and supplies were, in fact, delivered. With respect [to] the advertising and royalty fees, plaintiff agreed with me that I would not be responsible for these fees and that it would bill only defendant Thomas Smith during the period from 2007 to March of 2010.

(Naaman Aff. at 1.) The Naamans point to no other evidence that would establish the existence of a genuine issue of material fact with respect to Plaintiff's breach of contract claim. Although we are careful at this stage not to weigh the evidence or assess credibility, we nevertheless conclude that this affidavit does not create a genuine issue of material fact.

"'[C]onclusory self-serving affidavits are insufficient to withstand a motion for summary judgment.'" Kirleis v. Dickey, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)

5

(quoting Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002)).   "[M]ere allegations, general denials, or . . . vague statements" in an affidavit will not defeat a motion for summary judgment.  Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991).  "Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact."  Kirleis, 560 F.3d at 161 (citing among others Blair, 283 F.3d at 608).

Roger Naaman's affidavit does not set forth any specific facts, such as which paints and supplies were not delivered, nor does it list any other fees that were improperly charged to Defendants.  It merely contains a general denial that Defendants are liable for all of the paint and supply expenses.  Accordingly, it is insufficient to establish a genuine issue of material fact as to Defendants' liability for the paint and supply fees documented by Plaintiff.  The affidavit also asserts the existence of an agreement absolving the Naamans of liability for fees beginning in 2007, yet contains no facts regarding that agreement, such as whether the agreement was oral or written, and whether that agreement was made before or after the parties signed the Addendum.  This unadorned, conclusory statement that the parties entered into a subsequent contract is, therefore, too vague and conclusory to raise a genuine issue of material fact and defeat Plaintiff's Motion for Summary Judgment.

The record thus establishes that Defendants breached their obligation to make payments pursuant to the Franchise Agreement and Addendum, and that Plaintiff suffered damages as a result. We conclude that Plaintiff has satisfied its burden of establishing each element of its claim for breach of contract and that Defendants are liable to Plaintiff for unpaid fees in the amount of $130,120.12.

We further conclude that Plaintiff validly terminated the Franchise Agreement upon Defendants' failure to cure their breach.  A "'franchisor has the power to terminate the relationship

where the terms of the franchise agreement are violated.'" <u>Dunkin' Donuts Inc. v. Liu</u>, 79 F. App'x 543, 547 (3d Cir. 2003) (quoting <u>S & R Corp. v Jiffy Lube Int'l, Inc.</u>, 968 F.2d 371, 375 (3d Cir. 1992)). The non-payment of fees constitutes a material breach sufficient enough to terminate a franchise agreement. <u>Id.</u> Therefore, we conclude that Defendants breached the Franchise Agreement and Addendum by failing to pay the required fees, are liable to Plaintiff for those fees, and that Plaintiff validly terminated the franchise.

### IV.  CONCLUSION

For the reasons stated above, we grant the Motion for Summary Judgment and enter judgment in Plaintiff's favor and against all Defendants on the breach of contract claim, and award damages in the amount of $130,120.12. This amount is the total Defendants owe for franchise fees ($38,187.35), paint and supplies ($42,589.10), and advertising fees ($49,343.67). (Baratta Cert. ¶ 6 and Ex. A.) We also grant Plaintiff's request for attorneys' fees and costs.[2] Plaintiff shall submit a fee petition on or before December 13, 2011 and Defendants may submit any objections thereto on or before December 20, 2011. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.

---

[2]The Franchise Agreement states: "If Maaco shall institute any action at law or in equity against Franchisee to secure or protects its rights hereunder or to enforce the terms of this Agreement, Maaco shall be entitled to recover, in addition to any judgment rendered in its favor, reasonable attorneys' fees together with court costs and expenses of litigation." (Franchise Agreement ¶ 24.E).